UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENTINO F. OSUNA,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>P. D. BRAZELTON, Warden,<br><br>　　　　Respondent. | Case No.: 1:12-cv-00089-AWI-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation serving an indeterminate sentence of 25 years-to-life. (Doc. 14, Ex. A, p. 1). The sentence was imposed by the Superior Court of California, County of Fresno (the "Superior Court") after his 2010 conviction for possession of a firearm by a felon. (Id.). Under California's Three Strikes Law, Petitioner was found to have committed seven prior serious or violent felonies. (Id.). At sentencing, the trial court refused Petitioner's motion to strike six of those seven prior felony convictions. (Id.).

Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which, in an unpublished decision, affirmed Petitioner's conviction on May 2, 2011. (Doc. 14, Ex. A). On May 11, 2011, Petitioner filed a petition for review in the California

Supreme Court that was summarily denied on July 13, 2011.

On January 6, 2012, Petitioner filed the instant petition. (Doc. 1). Respondent's answer was filed on May 23, 2012. (Doc. 14). On April 24, 2012, Petitioner filed his Traverse. (Doc. 16). Respondent does not contend in the Answer that any of the three claims in the instant petition are unexhausted.

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

> During a three-week period between December 1992 and January 1993, at the age of 17, appellant committed a series of armed robberies. He plead guilty to six counts of armed robbery (§ 211) and one count of assault with a firearm (§ 245, subd. (a)(2)). He also admitted to personally using a firearm in the commission of all the offenses, and personally inflicting great bodily injury in connection with the assault charge. He was sentenced to 11 years and eight months. Appellant was released on parole in 2001, but a violation returned him to prison until he was discharged in 2002. He began working for a construction firm shortly thereafter as a plasterer. In 2006, he was convicted of misdemeanor assault with force likely to cause great bodily injury (§ 245, subd. (a)(1)), and misdemeanor criminal threats (§ 422).
>
> On the morning of November 5, 2009, appellant, driving Yvette Zendejas's car, sped through a school zone at approximately 55 miles per hour, passing Officer Brian Martens. Officer Martens attempted to pull appellant over, but appellant failed to stop. The officer observed appellant wearing a dark tank top and a beaded necklace, and that appellant had a beard and tattoos on his arms and face. Appellant sped up through the neighborhood before stopping abruptly at an intersection. He got out of the car, holding a black handgun in his left hand, and ran down the street before climbing over a wooden fence. Officer Martens, in pursuit, saw that appellant was wearing white gym shorts in addition to the dark tank top.
>
> Officer Martens and other officers arriving on scene secured a perimeter, searched the car, and determined from paperwork in it that appellant may be in Zendejas's home, which was within the perimeter set up by the police. Approximately 20 minutes after appellant had disappeared over the fence, he stepped out of the house, carrying a small child in his arms, and wearing jeans, a T-shirt, and a jacket. He was clean-shaven, but had redness around his jaw line and nicks on his face, consistent with a recent shave.
>
> Officer Martens positively identified appellant as the person who was driving the car, and who got out of it and ran. Speaking to a fellow officer within an earshot of appellant, Officer Martens commented appellant was the person he saw running with a gun. Appellant spontaneously responded that he did not have a gun, but rather that he was carrying a cell phone. A search of appellant after his arrest revealed underneath appellant's outer clothing a dark tank top, white gym shorts, and a beaded necklace, which matched Officer Martens's original description of appellant.
>
> Officers searching the home found a nine-millimeter handgun in an air conditioning duct, with the magazine missing. They also found hair shavings and moisture in a bathroom sink, indicating a recent shave. Officers searching outside the home found a loaded nine-millimeter

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

magazine in the direct path from the fence over which appellant climbed to the house. A certified police department range master testified the magazine and handgun fit together in such a way that he was of the opinion they were manufactured to fit together. Officers searching the car found a second nine-millimeter magazine and a coin purse containing additional live nine-millimeter ammunition.

Prior to trial, appellant filed a Pitchess motion requesting review of Officer Martens's personnel file for any documents and related information as to allegations of any illegal or false arrest, improper tactics, dishonesty, false imprisonment, false police reports, moral turpitude, or illegal search and seizure. The trial court granted the request and conducted an in camera hearing on the police records, but found no matters to disclose to the defense.

After appellant waived a jury trial on his prior convictions, a jury found appellant guilty of possession of a firearm by a felon, and obstructing a police officer in the performance of his duties. The trial court found appellant's seven prior felony convictions true and that they were serious and violent felonies. Appellant invited the trial court to strike six of the seven prior convictions in making its sentencing determination, pursuant to People v. Superior Court (Romero) (1996) 13 Cal.4th 497 (Romero). The trial court declined and sentenced appellant to a statutory sentence of 25 years to life for a third strike offense. (§ 667, subd. (e)(2)(A)(ii).)

(Doc. 14, Exh. A, pp. 1-2).

## DISCUSSION

### I.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Id., quoting Williams, 529 U.S. at 409-410.

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams, 529 U.S. at 409). In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. If fairminded jurists could so disagree, habeas relief is precluded. Richter, 131 S.Ct. at 786. As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction. Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment). The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788. Put another way, a state court's determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340. Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the

5

last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief: (1) denial of Petitioner's Pitchess motion for discovery of information related to the arresting officer; (2) the trial court's denial of Petitioner's Romero motion, requesting that multiple prior "strikes" be dismissed; and (3) Petitioner's sentence violates the Eighth Amendment prohibition against cruel and unusual punishment.

A.  Pitchess Motion.

Petitioner first contends that the trial court erred in denying his Pitchess motion.  This

contention is without merit.

1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> On appeal, appellant asks this court to review the trial court's ruling on his Pitchess motion. (See People v. Mooc (2001) 26 Cal.4th 1216, 1228–1229; §§ 832.5, 832.7; Evid.Code, §§ 1043, 1045.) Respondent has no opposition to appellant's request.
>
> Having reviewed the reporter's transcript of the in camera proceedings held on February 9, 2010, pertaining to appellant's Pitchess motion, we find no abuse of the trial court's discretion. (See People v. Jordan (2003) 108 Cal.App.4th 349, 367–368.)

(Doc. 14, Ex. A, p. 2).

2. Federal Standard.

In Pitchess v. Superior Court, 11 Cal.3d 531 (1974), the California Supreme Court held that a criminal defendant's fundamental right to a fair trial and an intelligent defense entitled defendant, who asserted self-defense to a charge of battery on a police officer, to discovery of police personnel records. Pitchess, 11 Cal.3d at 535-37.  In 1978, the California Legislature enacted Cal. Evid. Code §§ 1043 and 1045 to place specific limitations and procedural safeguards on the disclosure of peace officer personnel files.  As noted by the California Supreme Court "[t]he legislation was intended to balance the need of criminal defendants to relevant information and the legitimate concerns for confidentiality of police personnel records."  People v. Breaux, 1 Cal.4th 281, 311-312 (1991).  Pursuant to Cal. Evid. Code § 1043, a defendant has access to records of complaints, or investigations of complaints, or discipline imposed as a result of such investigations, "provided that such information is relevant to the subject matter involved in the pending litigation."  Cal. Evid. Code §1045(a).

More generally, federal due process requires disclosure of all substantial material evidence favorable to an accused.  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985).  The fact that information might help the defense does not establish the materiality required for constitutionally-compelled discovery.  United States v. Agurs, 427 U.S. 97, 109-10 (1976).  The Supreme Court has expressly ruled that a trial court cannot be required to search through a confidential personnel file without first establishing a basis for a defendant's claim that the file contained material evidence.  Pennsylvania v. Ritchie, 480 U.S. 39, 58 (1987).

3. <u>Analysis</u>.

In the instant case, Petitioner fails to establish the requisite materiality or relevance. The petition sets forth eleven reasons why Petitioner should be permitted to discover the confidential information in Officer Martens personnel file: (1) facial hair discrepancy; (2) failure to preserve evidence of hair found beside a woman's razor; (3) no forensic testing was conducted because Officer Martens instructed that no forensic testing would be conducted; (4) statements by Martens that suggest he lied in his police report; (5) Martens lied about making a "surrender" announcement to Petitioner; (6) Petitioner was not advised of his <u>Miranda</u> rights by Martens; (7) Martens did not take photographs of Petitioner to either prove or disprove the attempt to remove facial hair; (8) no photographs were taken of the pistol allegedly found in the home of Petitioner's friend; (9) no personal property was in the vehicle allegedly abandoned by Petitioner, contrary to Marten's report; (10) Martens instructed another officer, Pombo, not to take prints of the abandoned vehicle or in the house; (11) Martens told Pombo that photographs in the abandoned car were of Petitioner despite the fact that the dates on the photographs were of a time when Petitioner was in prison. (Doc. 1, pp. 7-8).

To the extent that Petitioner is contending that the state courts violated state law by refusing his <u>Pitchess</u> request, such a claim is not cognizable under federal habeas law. As previously stated, the basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

(emphasis added). <u>See also</u> Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. "[F]ederal habeas corpus relief does not lie for errors of state law." <u>Estelle</u>, 502 U.S. at 67, *quoting*, <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle</u>, 502 U.S. at 67-68. "A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or

by depriving the defendant of the fundamentally fair trial guaranteed by due process." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995); see Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir.1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985), *cert. denied*, 478 U.S. 1021 (1986). Therefore, "a federal court cannot disturb on due process grounds a state court's decision to admit evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walter, 45 F.3d at 1357.

To the extent that petitioner's claim is that he was denied his federal due process right to receive exculpatory and impeachment evidence, his claim does present a cognizable federal question, see Brady v. Maryland, 373 U.S. 83, 86–87 (1963); Harrison v. Lockyer, 316 F.3d 1063, 1066 (9th Cir.), cert. denied, 538 U.S. 988, 123 S.Ct. 1805 (2003), but one that lacks merit. To establish a Brady violation, a petitioner must show three things: that the evidence was favorable to him because it was either exculpatory or impeaching; that the evidence was suppressed by the prosecution either willfully or inadvertently; and that he was prejudiced by the nondisclosure. Strickler v. Greene, 527 U.S. 263, 281–282, 119 S.Ct. 1936 (1999). Evidence is material for Brady purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985).

Disclosure of a requested file is not warranted unless the defendant first "establish[es] a basis for his claim that it contains material evidence." Pennsylvania v. Ritchie, 480 U.S. 39, 58 n. 15, 107 S.Ct. 989 (1987); Harrison, 316 F.3d at 1066. This requirement of a threshold showing of materiality also applies to Pitchess requests. Harrison, 316 F.3d at 1066 (explaining that the Pitchess process operates in parallel to the procedure described in Brady and Ritchie, but noting that the state standard is "both a broader and lower threshold for disclosure" than the Brady standard).

Petitioner has not shown that any relevant evidence of police misconduct or dishonesty existed. His "reasons" for making the Pitchess motion fall into two broad categories, i.e., Martens' incompetent and incomplete investigation of the crime scene and witnesses, and purportedly intentional misconduct by Martens regarding the investigation that resulted in some evidence being distorted, suppressed, or manufactured. However, at its heart, Petitioner's argument in either category is premised solely on the

mere *possibility* that the police personnel records might contain evidence that the officer had a history of fabricating evidence, and upon Petitioner's *speculation* that the undisclosed files *may* have included complaints against Martens which *might* have some impeachment value on cross-examination at trial. But speculation does not suffice to show that the personnel files contained any information or evidence material to his defense. See Harrison, 316 F.3d at 1066 (finding no denial of due process where discovery was denied to a defendant who had failed to make a showing that a police personnel file contained evidence material to the defense); Phillips v. Woodford, 267 F.3d 966, 987 (9th Cir.2001) (finding no Brady violation where the petitioner failed to show that a report existed, or that if it did, it contained exculpatory evidence); United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir.1986) (stating that a defendant's "mere speculation about materials in the government's files does not require [a] ... court under Brady to make the materials available for [a defendant's] inspection") (internal quotation marks, brackets and citation omitted), cert. denied, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); see also United States v. Agurs, 427 U.S. 97, 109–110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

In sum, Petitioner's claim fails because he has not demonstrated that he was deprived of any material evidence. See Harrison, 316 F.3d at 1066 (rejecting a petitioner's challenge to the trial court's denial of a Pitchess motion because the petitioner failed to make threshold showing that the files contained information material to his defense); see also De La Cruz v. Jacquez, 2013 WL , *4(C.D.Cal. 2013)(denial of Pitchess motion not erroneous because Petitioner's grounds for discovery were based upon speculation); Rubin v. Uribe, 2012 WL 4848673, *5 (C.D.Cal.2012) (rejecting a claim that the trial court deprived the petitioner of due process by denying his Pitchess motion "[s]ince petitioner has not made any showing that the personnel records in question actually contain any information that is material to his defense"), report and recommendation adopted, 2012 WL 4840092 (C.D.Cal.2012); Gutierrez v. Yates, 2008 WL 4217865, *7 (C.D.Cal.2008) (absence of proof that exculpatory evidence would be found in police personnel records "is fatal to petitioner's due process claim"), report and recommendation adopted, 2008 WL 1694465 (C.D. Cal 2008); Gomez v. Alameida, 2007 WL 949425,

*15–16 (N.D.Cal.2007) (holding that the state court's denial of a discovery request under Pitchess did not violate the petitioner's constitutional rights where the petitioner had not made the requisite showing of materiality under state law) (citing Harrison, 316 F.3d at 1066). Accordingly, Petitioner has failed to show the state court's determination of the claim was contrary to, or an unreasonable application of, clearly established federal law.

B.  Romero Motion.

Petitioner next contends that the trial court erred by denying his Romero motion at sentencing. This contention is also without merit.

1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> Appellant contends the trial court abused its discretion in failing to strike six of appellant's seven prior serious felony convictions for sentencing purposes. A trial court's discretion to strike prior felony conviction allegations is limited to those instances "in furtherance of justice." (§ 1385, subd. (a); Romero, supra, 13 Cal.4th at p. 530.) Exercise of such discretion is subject to review for abuse. (Romero, supra, at p. 530.)A court's refusal to strike a prior conviction allegation is also subject to review under the deferential abuse of discretion standard. (People v. Carmony (2004) 33 Cal.4th 367, 374 (Carmony).) "[A] trial court does not abuse its discretion unless its [sentencing] decision is so irrational or arbitrary that no reasonable person could agree with it."(Id. at p. 377.)
>
> Furthermore, the Three Strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."(Carmony, supra, 33 Cal.4th at p. 378.) Thus, a court abuses its discretion in failing to strike a prior felony conviction allegation in only limited circumstances, such as when it was not aware of its discretion to dismiss, considered impermissible factors in declining to dismiss, or failed to correct an arbitrary, capricious or patently absurd result of application of the Three Strikes law under the specific facts of a particular case. (Ibid.)
>
> In considering a defendant's invitation to strike a prior felony conviction allegation, both the trial court and the reviewing court, "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part."(People v. Williams (1998) 17 Cal.4th 148, 161.)
>
> The purpose of the Three Strikes law is expressly set forth within its provisions: "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses."(§ 667, subd. (b); see People v. Strong (2001) 87 Cal.App.4th 328, 338 (Strong).) Accordingly, "extraordinary must the circumstance be by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack."(Strong, supra, at p. 338.)"[T]he circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary."(Carmony, supra, 33 Cal.4th at p. 378.)

> We fail to find such extraordinary circumstances here. Appellant contends the current offense, appellant's personal circumstances, and the circumstances of the prior convictions fail to justify appellant's inclusion within the Three Strikes scheme. He emphasizes the non-violent nature of the current offense, that no one was physically injured or threatened with the firearm, and that his actions stemmed from drug abuse and addiction. While appellant concedes the trial court "conscientiously considered and ruled on appellant's dismissal motion," appellant asserts he is not "yet" the type of offender to which the Three Strikes law was intended to apply, as he has not "repeatedly commit[ted] violent felonies threatening the public at large." (Original italics.) We are not persuaded.
>
> While appellant would have us believe he suffered merely from a "single period of aberrant behavior," we note the record indicates appellant's criminal history extends back to 1991, over a year prior to his strike offenses, and involves weapons and aggressive behavior. He was on probation when he embarked on three weeks of armed robberies and carjackings. He broke a woman's wrist when he hit her with a gun while stealing her purse in a grocery store parking lot. While participating in a carjacking, appellant shot into the air with a gun in front of the victim. Nearly 17 years later, he was found to be once again in possession of a gun and ammunition, demonstrating a lack of reform in his behavior from his youth.
>
> With respect to appellant's contention that the strikes were remote, with the last occurring in 1993, and not followed by a continuous life of crime, we note appellant has only been out of prison since late 2002, and has failed to remain offense-free since that time. He was convicted and served jail time in 2006 for misdemeanor offenses of assault with means likely to cause great bodily injury, and criminal threats.
>
> As to the current offense, while appellant admits it is a serious offense, he contends it does not justify a 25 years to life sentence. Under similar circumstances this court has in the past disagreed with this premise. As we stated in People v. Cooper (1996) 43 Cal.App.4th 815, 824 (Cooper): "the California Legislature views the possession of a handgun by an ex-felon to be a serious offense. The intent underlying section 12021, subdivision (a) was to limit the use of instruments commonly associated with criminal activity and to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence. [Citation.] The law properly presumes the danger is greater when the person possessing the firearm has previously been convicted of a felony. [Citation.]" We agree with the trial court that this was not a relatively minor offense, given the nature of the weapon, the circumstances of its possession, the volume of ammunition possessed with it, and its readiness for use.
>
> "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance."(People v. Myers (1999) 69 Cal.App.4th 305, 310.) The record before us demonstrates the court understood its discretionary authority and weighed the competing facts to reach a reasonable conclusion in conformity with the spirit of the law. In view of these facts and circumstances, appellant has failed to show this was an irrational or arbitrary exercise of discretion.

(Doc. 14, Ex. A, pp. 2-3).

        2. <u>Federal Standard</u>.

In <u>People v. Romero</u>, the California Supreme Court held that the trial courts retain discretion to dismiss prior strikes in the interests of justice. <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 529-30. The <u>Romero</u> holding applies retroactively to cases where the trial court "misunderstood the scope of its

1  discretion" to dismiss strikes. Id. at 530 n. 13. In such cases, the issue can be raised on appeal or in a
2  petition for writ of habeas corpus filed in the trial court. Id. If the trial court previously indicated that it
3  would not have exercised discretion to dismiss the strike, the claim should be summarily denied. Id.

4  The California courts subsequently expanded the application of Romero and established the
5  following procedures for cases where the defendant was sentenced under the three strikes law prior to
6  Romero: (1) if the trial court would have dismissed the strike, the defendant can raise the issue on
7  appeal and obtain remand for resentencing, or file a habeas petition in the trial court, id.; (2) if the trial
8  court would not have dismissed the strike, the claim must be summarily denied, id.; (3) if the record is
9  silent, the defendant must show good cause for resentencing in a habeas petition in the trial court,
10 People v. Fuhrman, 16 Cal.4th 930, 941-47, 67 Cal.Rptr.2d 1 (1997); or (4) if the defendant agreed to
11 the sentence pursuant to a plea bargain, he has no remedy, People v. Cepeda, 49 Cal.App.4th 1235,
12 1239-40 (1996); People v. Cunningham, 49 Cal.App.4th 1044, 1047-48 (1996).

13 The decisions of the California courts indicate that there is no unqualified right to a remand to
14 the trial court when a trial court has not exercised its discretion to dismiss a strike. See Jeffers, 39 F.3d
15 at 416 (no unqualified right of remand to trial court for resentencing where Arizona Supreme Court had
16 not developed a uniform policy of remanding after invalidating an aggravating factor in death penalty
17 cases). Even were this court to find that petitioner was constitutionally entitled to a new sentencing
18 determination under state law, the procedural requirements have been met.

19         3.  Analysis.

20 As previously stated, "[I]t is not the province of a federal habeas court to reexamine state-court
21 determinations on state-law questions." Estelle, 502 U.S. at 67-68. "A state court's procedural or
22 evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by
23 infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of
24 the fundamentally fair trial guaranteed by due process." Walters v. Maass, 45 F.3d 1355, 1357 (9th
25 Cir.1995); see Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20
26 (9th Cir.1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985), *cert. denied*, 478 U.S. 1021
27 (1986). Petitioner's contention that the trial court abused its discretion in refusing to dismiss six of his
28 seven prior "strike" convictions fails to present a cognizable federal question. Petitioner does not assert

a violation of the Constitution or federal law. Indeed, this claim in the petition is devoid of any citation to federal law, either statutory or constitutional. (Doc. 1, p. 9). Petitioner makes no effort whatever to attempt to elevate what is obviously a state law issue to a federal one. Rather, Petitioner argues that six of his seven felony convictions were "old," i.e., committed between 1992-1993, and constituted a short period of "aberrant" behavior that should not dictate an indeterminate sentence for a non-violent offense that occurs seventeen years later. (Doc. 1, p. 9). In the absence of any federal constitutional issue, it thus appears to the Court that Petitioner's entire claim is premised on a violation of California law. Consequently, Petitioner's claim is not cognizable on federal habeas review and must be denied.

In any event, the claim is without merit. Petitioner raised the issue originally in the trial court and again on his direct appeal before the 5th DCA. In both instances, the state courts considered the relevant law, applied them to the facts in the record regarding Petitioner's prior felony convictions, and made their respective determinations not to strike any of the prior felony convictions. Despite Petitioner's contention that the convictions are "old," and the product of juvenile immaturity, the convictions were numerous and violent, and the Court is not prepared to second-guess the state courts, applying their own law, that such convictions should be considered when sentencing Petitioner for the present offense. As the 5th DCA noted, Petitioner was in prison on the 1992-1993 convictions until 2002, and was reincarcerated in 2006. The instant crime was committed in 2009. Even a cursory review of such a chronology does not suggest to the Court that the 1992-1993 strikes are so remote in time that their significant should be disregarded. Also, as the state court noted, even Petitioner acknowledges that the instant crime, i.e., possession of a weapon by a felon, is a serious offense. Although the offense itself did not result, in this case, in any actual violence or bodily injury, the mere fact that a convicted felon, prohibited under state law from possessing such a weapon, was carrying the weapon and had it available for use, has the potential for violence, since many felons have used such weapons in the past and, presumably, under the proper circumstances, would be tempted or provoked to use them again. It is this potential for violence, as much as crimes that actually involve violence, that underlie the policy prohibiting felons from possessing such weapons. Under such circumstances, the Court would uphold the state court's decision that denial of the <u>Romero</u> motion was within the trial court's discretion. In sum, Petitioner's claim received the consideration it was entitled to under state

law, and no state created liberty interest was violated. See Campbell v. Blodgett, 997 F.2d 512 , 522 (9th Cir. 1993), *cert. denied* 510 U.S. 1215, 114 S.Ct. 1337 (1994) (no due process violation where state court conducted mandated review and made findings to which petitioner entitled).  In light of the above, the Court finds that the state court's denials do not constitute an unreasonable application of the United State Supreme Court's holding in Hicks.  28 U.S.C. § 2254(d).

    C.  Eighth Amendment.

Finally, Petitioner contends that his sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment.  This contention is too without merit.

    1.  The 5th DCA's Opinion.

**A. Standard of Review**

Under California law, a punishment is cruel or unusual if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. [Fn. omitted.]" (In re Lynch (1972) 8 Cal.3d 410, 424 (Lynch).) Lynch suggests three techniques courts may use to aid in administering a disproportionality analysis: 1) consideration of the nature of the offense and the offender; 2) a comparison with the punishment imposed for more serious crimes in the same jurisdiction; and 3) a comparison with the punishment imposed for the same offense in different jurisdictions. (People v. Norman (2003) 109 Cal.App.4th 221, 230 (Norman); Smith v. Municipal Court (1978) 78 Cal.App.3d 592, 596 (Smith).) Disproportionality need not be established in all three areas. (Norman, supra, at p. 230.) These techniques are not mechanically applied; if the latter two Lynch techniques indicate disproportionality, but the first test finds no disproportionality, the first test is nonetheless dispositive. (People v. Gayther (1980) 110 Cal.App.3d 79, 90; Smith, supra, at p. 599.)

Similarly, under federal law, the Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments" and "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" (Ewing v. California (2003) 538 U.S. 11, 20 (lead opn. of O'Connor, J.) (Ewing), quoting Harmelin v.. Michigan (1991) 501 U.S. 957, 996–997 (conc. opn. of Kennedy, J.).) That principle prohibits "'imposition of a sentence that is grossly disproportionate to the severity of the crime.'" (Ewing, supra, at p. 21, quoting Rummel v. Estelle (1980) 445 U.S. 263, 271.)  "A proportionality analysis requires consideration of three objective criteria, which include '(i) the gravity of the offense and the harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.' (Solem v. Helm (1983) 463 U.S. 277, 292.) But it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play. (Harmelin v. Michigan, supra, 501 U.S. at p. 1005 (conc. opn. Of Kennedy, J.).)" (People v. Meeks (2004) 123 Cal.App.4th 695, 707 (Meeks).) Thus, we perform substantially similar analyses for appellant's state and federal constitutionality arguments. (See Mantanez, supra, 98 Cal.App.4th at p. 359 ["when discussing the proportionality of a sentence, the Supreme Court [of the United States] in Solem set forth as guidelines the same factors as expressed in In re Lynch, supra, 8 Cal.3d 410. Thus, Solem adds no additional analysis to Lynch"].)

"[A] punishment which is not disproportionate in the abstract is nevertheless constitutionally

impermissible if it is disproportionate to the defendant's individual culpability." (People v. Dillon (1983) 34 Cal.3d 441, 480 (Dillon), abrogated on other grounds as stated in People v. Chun (2009) 45 Cal.4th 1172, 1186.) "To determine whether a sentence is cruel or unusual as applied to a particular defendant, a reviewing court must examine the circumstances of the offense, including its motive, the extent of the defendant's involvement in the crime, the manner in which the crime was committed, and the consequences of the defendant's acts. The court must also consider the personal characteristics of the defendant, including age, prior criminality and mental capabilities. [Citation.]" (People v. Hines (1997) 15 Cal.4th 997, 1078.)

**B. California Standard**

**1. Nature of Offense**

We recognize, as appellant contends, there was no violence in the commission of the instant offense. We reject, however, appellant's assertion that because the current offense does not involve violence, imposition of a term of 25 years to life is cruel or unusual. As noted in part II, ante, the California Legislature views the possession of a handgun by an ex-felon to be a serious offense. Thus, the Legislature could with good reason conclude that appellant's crime was felonious and deserving of a substantial punishment, regardless of the presence or absence of violence. (Cooper, supra, 43 Cal.App.4th at pp. 824–825; see also People v. Ingram (1995) 40 Cal.App.4th 1397, 1415, disapproved on other grounds by People v. Dotson (1997) 16 Cal.4th 547, 558–559["[s]ociety's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence"].) It is not this court's role to second guess the Legislature. "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism." (Cooper, supra, at p. 823.) "By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.' Such determinations are questions of legislative policy." (Id. at p. 824.)

Here, appellant carried two magazines and 25 rounds of live ammunition, in the front seat of a car, easily accessible, and ready to use. Instead of yielding to police when found speeding through a school zone during school hours, he chose to flee, alter his appearance in an attempt to mislead the police about his true identity, and hide evidence. The offense posed a serious danger to the public. (See Mantanez, supra, 98 Cal.App.4th at pp. 359, 366.)

**2. Nature of Offender**

Appellant was 34 years old at the time of the offense, and gainfully employed, with a significant work history after being discharged from parole. This fact, however, fails to demonstrate that appellant's sentence is unconstitutional. Appellant places great weight on the fact he was a 17-year-old juvenile at the time of the three weeks encompassing his prior strike offenses. He contends he was less culpable for his actions because of his youth, and should therefore receive leniency for his actions now, as a 34-year-old. We are not persuaded. As discussed in part II, ante, the record fails to indicate appellant was the victim of youthful indiscretion during those three weeks. His actions were not those of an immature, unsophisticated juvenile. (Cf. Dillon, supra, 34 Cal.3d at p. 488.) We further note the Three Strikes law specifically brings within its scheme juvenile convictions committed by juveniles over the age of 16 and meeting certain criteria as to severity of offenses, which appellant's offenses meet here. (§ 667, subd. (d)(3).) If the Legislature and the people of California wanted less culpability for juvenile convictions of the type of offenses appellant committed, they could have easily done so, but chose not to. Furthermore, appellant, although a juvenile at the time of his offenses, was tried as an adult, and committed as an adult. The court felt at that time it appropriate to treat appellant as an adult. We find no reason to disregard this decision now.

Appellant has failed to learn from his past mistakes and continues to pose a significant degree of danger to society.

**3. Comparative Analyses**

Because we find no inference of gross disproportionality in comparing appellant's crime and sentence, we need not perform further comparative analysis. "'[O]ne factor may be sufficient to determine the constitutionality of a particular sentence,' [citation .]" such as where "the gravity of [defendant's] crime alone was such that 'a comparison of his crime with his sentence does not give rise to an inference of gross disproportionality....'" (Mantanez, supra, 98 Cal.App.4th at p. 363.) In such case, comparative analysis of a defendant's sentence need not be performed. (Ibid.)

For the sake of argument, we find appellant's comparison of his sentence to that received for a single offense of voluntary manslaughter inapposite. As respondent points out, appellant's argument fails to take into account the recidivism underlying his sentence. As to a comparison to other jurisdictions, we reiterate our past position that despite other jurisdictions' imposition of shorter terms for recidivists whose current offense and criminal history are comparable to those of appellant, this fact alone fails to compel the conclusion that appellant's sentence is disproportionate to his criminal status. Nothing in the prohibition against cruel or unusual punishment per se prevents a state from responding to changed social conditions and increasing the severity of treatment of recidivist felons differently than other states. (Cooper, supra, 43 Cal.App.4th at p. 827; see also Ewing, supra, 538 U.S. at p. 25.)

**C. Federal Standard**

Similarly, for the same reasons set forth above under the California standard discussion, an analysis of the gravity of the offense and the harshness of the penalty fails to lead us to infer gross disproportionality as between the two. As Justice O'Connor stated in her lead opinion, "[r]ecidivism has long been recognized as a legitimate basis for increased punishment. [Citations.]" (Ewing, supra, 538 U.S. at p. 25.) In considering the gravity of the offense, the Supreme Court looked not only to Ewing's current felony, but also to his long criminal felony history, stating "[a]ny other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction ... '[i]t is in addition the interest ... in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' [Citations.]" (Id. at p. 29.) Applying the proportionality test in light of Ewing, we conclude that defendant's sentence of 25 years to life in prison for possession of a handgun cannot be considered a sentence that is grossly disproportionate to his crime in light of his inability to conform to the norms of society.

(Doc. 14, Ex. A, pp. 3-7).

    2.  <u>Federal Standard</u>.

The Eight Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines be imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The last clause "prohibits not only barbaric punishments," <u>Solem v. Helm</u>, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), but any "extreme sentence[ ] that [is] 'grossly disproportionate to the crime.'"

Ewing, 538 U.S. at 23 (quoting Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part)). The United States Supreme Court held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment. See Harmelin, 501 U.S. at 996 (Kennedy, J., concurring); see also Taylor v. Lewis, 460 F.3d 1093, 1097 (9th Cir. 2006). However, successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare." Solem, 463 U.S. at 289–90; see also Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring) (citing Solem v. Helm). Only if an inference of gross disproportionality arises does the court proceed to compare the defendant's sentence with sentences in the same and other jurisdictions. Harmelin, 501 U.S. at 1005. The threshold for an "inference of gross disproportionality" is quite high. See, e.g., Ewing, 538 U.S. at 30 (sentence of twenty-five years to life for conviction of grand theft with prior convictions was not grossly disproportionate); Harmelin, 501 U.S. at 1008-09 (mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality); Lockyer v. Andrade, 538 U.S. 63 (2003) (upholding two consecutive twenty-five-to-life terms for two convictions of theft of videotapes with prior convictions).

In assessing the compliance of a non-capital sentence with the proportionality principle, a reviewing court must consider "objective factors" to the extent possible. Solem, 463 U.S. at 290. Foremost among these factors are the severity of the penalty imposed and the gravity of the offense. "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." Taylor, 460 F.3d at 1098.

3. Analysis.

To the extent that Petitioner is contending that, under California law, and particularly under California's Constitution, the sentence is cruel and unusual (Doc. 1, p. 12), his argument fails since, as mentioned previously, claims of violations of state law are not cognizable in habeas proceedings in federal court. Estelle, 502 U.S. at 67-68.

   To the extent that Petitioner's claim is based upon the Eighth Amendment, a review of the record makes abundantly clear that this case is not that exceedingly "rare" and "extreme" case to which the Supreme Court was referring in <u>Andrade</u>.  <u>Andrade</u>, 538 U.S. at 73.  Although Petitioner attempts, unsuccessfully, to distinguish his case from <u>Ewing</u> and <u>Andrade</u>, any distinction that can be made between those cases and the instant one would not be drawn in Petitioner's favor.  Petitioner contends that the crimes in <u>Andrade</u> (50-year-to-life sentence for theft of $150 worth of videotapes) and <u>Ewing</u> (25-year-to-life sentence for theft of three golf clubs), both had the "real possibility of violence," while, by contrast, in this case Petitioner was merely "fleeing to avoid violence." (Doc. 16, p. 7).  Such self-serving and distorted logic, however, is unpersuasive.  In neither <u>Andrade</u> nor <u>Ewing</u> did the defendant possess a weapon, as did Petitioner here.  It defies both common sense and reason that possession of a dangerous weapon by a multiple felon who flees to avoid capture is a situation that could possibly have a lower potential for violence than that of unarmed criminals caught while shoplifting.

   Petitioner's contention that his case is mitigated by the fact that his predicate felonies were committed when he was a juvenile have already been addressed in the context of the <u>Romero</u> motion.  To reiterate, the fact that Petitioner spent many years in prison for his juvenile offenses cannot be used as a basis to diminish either the severity of the predicate crimes he committed or the danger he posed in this case when, as an armed and fleeing felon, he was finally apprehended.

   The ultimate fallacy in Petitioner's argument on this point is that Petitioner is <u>not</u> being sentenced as a juvenile, but as an adult.  The sentencing courts at the prior convictions in 1992-1993 might legally have taken into consideration Petitioner's age at the time of imposing those sentences; however, such arguments have little currency in the instant case since Petitioner is older and, presumably, wiser than he was in 1992-1993, and should have been well aware that possessing a firearm was a felony that could subject him to a Three Strikes sentence.  That Petitioner chose to ignore the circumstances and subsequently incurred the instant indeterminate life sentence, is the most telling evidence that Petitioner remains a threat to public safety and that he is "simply incapable of conforming

19

to the norms of society as established by its criminal law." (Ewing, supra, 538 U.S. at p. 29.).[2]  Such circumstances fully justify the State of California's decision to impose an indeterminate life sentence as a recidivist felon, a decision that, under federal standards, was neither a violation of the Eighth Amendment nor objectively unreasonable.  Hence, Petitioner is not entitled to relief on this claim.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 21 days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten court days after service of the Objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 7, 2014**                              **/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[2] Or, as the 5th DCA put it, "Nearly 17 years later, [Petitioner] was found to be once again in possession of a gun and ammunition, demonstrating a lack of reform in his behavior from his youth."